# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

      Plaintiff,

                Case Number 3:18 CR 00124-MCR-1

                Hon. M. CASEY RODGERS

DEREK THOMPSON

      Defendant.

_____/

ASHLEY NOELLE JOHNSON
Eglin Legal Office
96 TW/JA Eglin AFB
501 W Van Matre Ave.
Ste. 1, Building 2
(850) 882-8308
Email: gene.crawford@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant
DEREK THOMPSON
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: saschulman@comcast.net

JEFFREY MICHAEL THARP
DOJ-USAO
21 E Garden Street
Ste. 400
Pensacola, Fl 32502
(850) 444-4000
Fax: (850) 434-9050
Email: Jeffrey.tharp@usdoj.gov

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: attorneystefanielambert@gmail.com

TARACINA ROSE BINTLIFF
United States Air Force
501 W Van Matre Ave.
Eglin Air Force Base, FL 32542
(970) 372-8956
Email: taracina.bintliff.1@us.af.mil
_____/

### DEFENDANT, DEREK THOMPSON'S SUPPLEMENTAL MOTION FOR RECONSIDERATION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE

NOW COMES the Defendant DEREK THOMPSON, by and through his attorneys, SANFORD SCHULMAN, AND STEFANIE LAMBERT JUNTTILA, and states in support of Motion to Resentence Defendant and Request for Early Release as follows:

1. On March 6, 2019, the defendant, DEREK THOMPSON, pled guilty to Fleeing to Elude a Law Enforcement Officer, in violation of Sections 316.1935(1), Florida Statues, and Title 18, United States Code, Sections 7 and 13, and Felony Driving Under the Influence, in violation of Sections 316.193(1)(a), (1)(c), (2)(b)1, and (2)(b)3, Florida Statutes, and Title 18, United States Code, Sections 7 and 13.

2. On July 29, 2019 this Court sentenced DEREK THOMPSON to 40 months as to Counts One and Two, with said terms to run concurrently, with the other. This sentence shall run consecutively to the yet-to-be imposed sentence in Green Bay, Wisconsin. Additionally, Mr. Thompson was

sentenced to 3 years of supervised release as to Counts One and Two, with said terms to run concurrently, one with the other. The Court further imposed Special Conditions of Supervised Release that included inpatient treatment and therapy. (R. 39, PgID 1-7).

3.      Mr. Thompson is serving his sentence at FCI Milan with a projected release date of August 7, 2022.

4.      Mr. Thompson filed a Motion for Resentencing and Reduction of Sentence on May 16, 2020, and his Motion was denied by the Honorable Court on May 18, 2020.

5.      Mr. Thompson respectfully requests this Honorable Court to reconsider his Motion since his thirty (30) day wait period for the Bureau of Prisons to have the first opportunity to review his request has expired.

6.      Mr. Thompson respectfully requests that his sentence be modified pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. Mr. Thompson is presently incarcerated at FCI Milan and the COVID-19 pandemic has required the BOP, and jails to suspend all visitation.  Mr. Thompson is currently serving a much harsher sentence than this Honorable Court originally contemplated due prison policy changes in light of COVID-19. Mr. Thompson spends a significant amount of each day, approximately 23 hours, in his cell. Mr. Thompson's family concern for his

health and safety has been heightened recently due to noticeable changes in

Mr. Thompson. Mr. Thompson is exhibiting signs that he is ill, and has not

received a COVID-19 test. Mr. Thompson recently has lacked the energy to

make phone calls, speak with his family, and has demonstrated that he is

unaware of date and time.

7.        The Bureau of Prisons' website tracking COVID-19 confirms 118

inmates have died at BOP facilities, and over 12,000 inmates have tested

positive for COVID-19 since March 2020. As of August 31, 2020, multiple

inmates have died from COVID-19 at FCI Milan, there are currently inmates

positive with COVID-19, and hundreds of inmates and staff have previously

tested positive for COVID-19 at FCI Milan as the disease spread throughout

the prison between the staff and inmates. *COVID-19 Cases*, August 31,

2020, https://www.bop.gov/coronavirus/.

8.        As numerous courts have recognized, "[t]he risk of contracting

COVID-19 in tightly confined spaces, especially jails, is not exceedingly

obvious." Basank v. Decker, 2020 WL 1481503, at 5 (S.D.N.Y. Mar. 26,

2020). One public health expert has explained: "If you wanted to set up a

situation that would promote rapid transmission of respiratory virus, you

would say prison it's close quarters, unsanitary, individuals in frequent

contact." In such situations it is "nearly impossible to provide infection

control." (Daniel A. Gross, "It Spreads Like Wildfire': The Coronavirus Comes to New York's Prisons," The New Yorker, Mar. 24, 2020. Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails" as "extraordinarily high" due not only to the close quarters in which in inmates reside, but also the quality and quantity of available medical care and the fact that hundreds of individuals—from staff to new arrestee—enter and leave detention facility. (Brie Williams, COVID-19 in Correctional Settings, Mar. 22, 2019. http;//www.scrbd.com/document/452807558/NY-Press-Conference-Brie-Williams-Remarks). These dangers are not theoretical. During the COVID-19 outbreak in China prisons became hotbeds of infection despite stringent control measures, and press reports indicate that the same is now occurring at FCI Oakdale in Louisiana. (Zi Yang, "Cracks in the System: COVID-19 in Chinese Prisons," The Diplomat, Mar. 9, 2020, https://thediplomat.com/2020/03/cracks-in -the-system-covid-19-in-chinese-prisons/; Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples Federal Prison in Louisiana," Washington Post, Mar. 29, 2020, https://www.washingtonpost.com/national/an-explosion-of-cornavirus-cases-criplles-a-federalpriosn-in-lousiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.thml.) The CDC has recommended that high-risk

individuals avoid crowds, keep space between themselves and others, and

stay at home to avoid exposure to the virus. (Get Ready for COVID-19,

Centers for Disease Control and Prevention,

https://www.cdc.gov/coronavirsus/2019-ncov/specific-groups/get-

ready.html.) Despite BOP's best efforts, it is impossible for Ms. Gu to

practice "social distancing" to protect himself. In the Center for Corrections

of Northwest Ohio, inmates eat elbow-to-elbow at the same time, and share

bathrooms, showers and stalls. Self-isolation is nearly impossible. In short,

measures by the jail cannot help but be insufficient.

9.      Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court may "reduce the

term of imprisonment (and may impose a term of probation or supervised

release with or without conditions that does not exceed the unserved portion

of the original term of imprisonment), after considering the factors set forth

in section 3553(a) to the extent that they are applicable, if it finds that

substantial and compelling reasons warrant such a reduction."

10.      18 U.S.C. § 3582(c)(1)(A)(i), the Court may "reduce the term of

imprisonment (and may impose a term of probation or supervised release

with or without conditions that does not exceed the unserved portion of the

original term of imprisonment), after considering the factors set forth in

section 3553(a) to the extent that they are applicable, if it finds that

substantial and compelling reasons warrant such a reduction."

11.      18 U.S.C. § 3582(c)(1)(A)(i) requires that an inmate exhaust his

administrative remedies or wait for 30 days to lapse following his

submission of a request for relief  to the warden of his facility before seeking

judicial relief.

12.      Mr. Thompson, through counsel, has exhausted his administrative

remedies and requested Compassionate Release/Reduction in Sentence

directly to the Bureau of Prisons, and Warden at FCI Milan on May 12,

2020.

13.      We respectfully submit that Mr. Thompson's plea to a non-violent

offense in combination with the COVID-19 pandemic provide extraordinary

and compelling reasons to modify his sentence to permit his immediate

release to home confinement. See Basank, 2020 WL 1481503 at 5 (The

spread of COVID-19 "is measured in a matter of a single day—not weeks,

months, or years."). Mr. Thompson did not receive the death penalty as a

result of his plea, and the remainder of his term of incarceration can be

accomplished by a modification to home confinement.

14.      Such action by this Court would not be unprecedented. As the number

of COVID-19 cases has grown, courts have increasingly taken action to

protect the health of at-risk inmates and detainees. See United States v. Campagna, 2020 WL 1489828 (S.D.N.Y. Mar 27, 2020)(modifying defendant's sentence to replace his outstanding term of imprisonment with an equal period of home incarceration); United States v. Perez, No. 19 Cr. 297 (PAE), Amended Order, Dkt. No. 62 (S.D.N.Y. Mar. 19, 2020)(temporarily releasing pre-trial defendant from custody during public health crisis); Coronel v. Decker, 2020 WL 1487274 (S.D.N.Y Mar. 27, 2020) (ordering plaintiffs' immediate release from ICE custody); Basank v. Decker, 2020 WL 1481503, at 7 (same).

15.     Doctors are warning the public that young people in their 30's and 40's are testing positive for COVID-19, and dying of strokes. The medical community is perplexed by this data since most of these young people showed no signs or symptoms of COVID-19 prior to stoke. *Young and middle-aged people, barely sick with covid-19, are dying of strokes,* The Washington Post, (April 25, 2020), https://www.washingtonpost.com/health/2020/04/24/strokes-coronavirus-young-patients/. Currently Mr. Thompson has no way to take his temperature, nor has he been tested for COVID-19.

16.     Mr. Thompson makes this application knowing that the crimes he committed were serious. He understands that a substantial term of

incarceration was appropriate. At the time the Court sentenced Mr. Thompson, incarceration during a pandemic was not contemplated by this Court. In light of this unprecedented change in circumstances, we respectfully request that the Court exercise its power to modify Mr. Thompson's sentence and direct that he be released to home confinement to serve the remainder of his sentence, allow him to immediately receive substance abuse treatment, and therapy. Mr. Thompson needs to be released to follow up with his medical doctor, follow his doctor's instructions, and begin substance abuse treatment/therapy immediately. Programming has been suspended by the Bureau of Prisons in light of COVID-19, and home confinement and a GPS tether would allow Mr. Thompson to receive the treatment ordered by this Honorable Court. This Honorable Court thoughtfully fashioned a sentence to include substance abuse treatment, and Mr. Thompson is serving a much harsher sentence than this Honorable Court could have contemplated at the time of sentencing.

WHEREFORE, the Defendant DEREK THOMPSON, by and through his attorneys, SANFORD A. SCHULMAN, AND STEFANIE LAMBERT JUNTTILA, and respectfully requests this Honorable Court enter an order resentencing DEREK THOMPSON to early release from federal prison for the reason so stated herein.

Respectfully submitted,

s/ Sanford A. Schulman
Sanford Schulman
Attorney for Defendant
        DEREK THOMPSON
500 Griswold St. Ste 2340
Detroit, MI 48226
saschulman@comcast.net
Phone: (313) 963-4740

/s/ Stefanie L. Lambert Junttila
Stefanie L. Lambert Junttila
Attorney for Defendant
        DEREK THOMPSON
Phone: (313) 963-4740
500 Griswold St. Ste. 2340
Detroit, MI 48226
Email:attorneystefanielambert@gmail.com
Phone: (313) 963-4740


Date:        August 31, 2020

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRIC OF FLORIDA

UNITED STATES OF AMERICA,

       Plaintiff,

               Case Number: 3:18 CR 00124-MCR-1

               Hon.  M. CASEY RODGERS

DEREK THOMPSON
          Defendant.

_____/

| | |
|---|---|
| ASHLEY NOELLE JOHNSON | SANFORD A. SCHULMAN |
| Eglin Legal Office | Attorney for Defendant |
| 96 TW/JA Eglin AFB | DEREK THOMPSON |
| 501 W Van Matre Ave. | 500 Griswold Street, Ste. 2340 |
| Ste. 1, Building 2 | Detroit, MI 48226 |
| (850) 882-8308 | (313) 963-4740 |
| Email: gene.crawford@usdoj.gov | Fax: (248) 671-0353 |
| | Email: saschulman@comcast.net |
| | |
| JEFFREY MICHAEL THARP | STEFANIE LAMBERT JUNTTILA |
| DOJ-USAO | Attorney for Defendant |
| 21 E Garden Street | 500 Griswold Street, Ste. 2340 |
| Ste. 400 | Detroit, MI 48226 |
| Pensacola, Fl 32502 | (313) 963-4740 |
| (850) 444-4000 | Fax: (248) 671-0353 |
| Fax: (850) 434-9050 | Email: attorneystefanielambert@gmail.com |
| Email: Jeffrey.tharp@usdoj.gov | |

TARACINA ROSE BINTLIFF
United States Air Force
501 W Van Matre Ave.
Eglin Air Force Base, FL 32542
(970) 372-8956
Email: taracina.bintliff.1@us.af.mil

_____/

## BRIEF IN SUPPORT OF DEFENDANT, DEREK THOMPSON'S SUPPLEMENTAL MOTION FOR RECONSIDERATION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE

NOW COMES the Defendant DEREK THOMPSON, by and through his

attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and state

in support of his Brief in Support of his Motion to Resentence Defendant and

Request for Early Release as follows:

I.     Should this Honorable Court resentence Derek Thompson and release
       him early from his prison sentence and order home confinement in light
       of the current pandemic?

       Defendant answers. "Yes."
       Plaintiff answers. "No."

## STATEMENT OF FACTS

Defendant Derek Thompson pled guilty to On March 6, 2019, the defendant,

DEREK THOMPSON, pled guilty to Fleeing to Elude a Law Enforcement Officer,

in violation of Sections 316.1935(1), Florida Statues, and Title 18, United States

Code, Sections 7 and 13, and Felony Driving Under the Influence, in violation of

Sections 316.193(1)(a), (1)(c), (2)(b)1, and (2)(b)3, Florida Statutes, and Title 18,

United States Code, Sections 7 and 13.

Defendant's current conditions of confinement are putting his health at risk.

Defendant seeks immediate release from confinement as a result of here being no

conditions of confinement sufficient to prevent irreparable injury. Defendant is

currently serving out his 40-month sentence at FCI Milan, and has a projected

release date of August 7, 2022. Defendant has recently exhibited changes with his

health, and has not received a COVID-19 test.

ARGUMENT

Under the First Step Act, Mr. Thompson is eligible for reduced sentence and

this Court can act sua sponte to adjust downwards Mr. Thompson's imposed

sentence so that he is eligible for supervised release.

In addition, the public health recommendation is to release high-risk people

from detention, given the heightened risks to their health and safety (ECF No. 6-1,

PgID 87 (Declaration of Infectious Disease Epidemiologist Joseph Amon)). The

only way to prevent serious illness including death is to release all people with low

risk factors.

Mr. Thompson is housed at FCI Milan in Michigan. As the number of

inmates testing positive for COVID-19 increased throughout the jails, and prisons

the Governor of Michigan declared a state of emergency. (Executive Order No.

2020-4). This Order was followed by numerous orders closing Michigan schools

on March 16, 2020, and prohibiting people attending large events in shared spaces

on March 13, 2020. (Executive Order No. 2020-20). Mitigation efforts continued

and people were advised to stay at home and restrictions were placed on the use of

public places from March 22, 2020 through April 13, 2020 (Executive Order No.

2020-20). On March 24, 2020, the Governor temporarily suspended activities that

are not necessary to sustain or protect life through April 13, 2020. (Executive

Order No. 2020-21). The Governor has extended the stay at home/in place orders

several times to protect the health and safety of Michiganders as the COVID-19

cases continue to climb. Currently, the stay in place order in Michigan is not set to

expire until May 28, 2020. *Michigan Gov. Gretchen Whitmer extends stay-at-home*

*order until May 28*, May 7, 2020,

https://www.clickondetroit.com/news/local/2020/05/07/michigan-gov-gretchen-

whitmer-extends-stay-at-home-order-until-may-28/.

Additionally, as of August 31, 2020, Michigan COVID-19 cases and deaths

have soared. Over 100,000 people in Michigan have contracted COVID-19, and

almost 6,500 have died from the virus. *Michigan Coronavirus (COVID-19) Cases*

*up to 102,469;Death Toll now 6,480*, August 31, 2020,

https://www.clickondetroit.com/health/2020/08/31/michigan-coronavirus-covid-19-cases-up-to-102468-death-toll-now-at-6480.

The COVID-19 virus has directly impacted FCI Milan. The Bureau of Prisons' website tracking COVID-19 confirms 118 inmates have died at BOP facilities, and over 12,000 inmates have tested positive for COVID-19 since March 2020. As of August 31, 2020, multiple inmates have died from COVID-19 at FCI Milan, there are currently inmates positive with COVID-19, and hundreds of inmates and staff have previously tested positive for COVID-19 at FCI Milan as the disease spread throughout the prison between the staff and inmates. *COVID-19 Cases*, August 31, 2020, https://www.bop.gov/coronavirus/.

A well-known medical professional, Dr. Greifingert, spoke on a similar issue but relating to ICE facilities. Dr. Greifingert had stated that the only way to "prevent serious illness including death" in ICE facilities is to "release all people with risk factors." (ECF NO. 20-3, PageID.374 (Declaration of Dr. Robert B. Greifingert). Same can be said about FCI Milan.

On March 23, 2020, the Center for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff and visitors*." Interim Guidance on Management of Coronavirus Disease 2019* (COVID-19) *in Correctional and Detention Facilities*, Centers for Disease Control

(Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correctiondetention/guidance-correctional-detention.html.[Hereinafter"CDC Guidance 3/23/2020"].

Specifically, the CDC has noted that many detention conditions create a heightened risk of danger to its inmates. Risks include low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congretional environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). Id.

The only adequate relief for Mr. Thompson is to release him from confinement at FCI Milan. Social distancing, hygiene measures and proper diet are Mr. Thompson's only defense against COVID-19. These protective measures are exceedingly difficult at FCI Milan, if not impossible. Mr. Thompson shares toilets, sinks, phones, showers, and eats in communal spaces. He is in frequent, close contact with other inmates, and officers.

In addition, matters are only getting worse in facilities like FCI Milan. On April 1, 2020, the Rikers Island Jail complex's chief physician acknowledged that "infections are soaring" despite the facility's "following Center for Disease Control and Prevention guidelines and having moved mountains to protect patients." Miranda Bryant, *Coronavirus Spread at Rikers is a 'Public Health*

*Disaster'. Says Jail's Top Doctor,* The Guardian (Apr. 1, 2020),

https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jailcoronavirus-public-health-disaster.

No matter what steps are taken at FCI Milan, Mr. Thompson is constantly at risk of contracting COVID-19 during this pandemic. Absent an early release by this Court, Mr. Thompson has a high likelihood of irreparable harm in the form of loss of health or life should he contract COVID-19, if he has not yet already. Mr. Thompson has not had his temperature taken and it is unknown if he has COVID-19. People in Mr. Thompson's age range are reporting to hospitals and dying of strokes. This population is testing positive for COVID-19, yet not showing symptoms until they have a stroke.

Currently, there is very little guidance regarding COVID-19 and how it can be treated. As of April 13, 2020, health experts aren't sure why some healthy, young people are dying from the virus. *Why does COVID-19 kill some young, healthy people-and spare others* , Advisory Board (April 13, 2020),

http://www.advisory.com/daily-briefing/2020/04/13/covid-young-people.

Additionally, doctors are warning the public that young people in their 30's and 40's are testing positive for COIVD-19, and dying of strokes. The medical community is perplexed by this data since most of these young people showed no signs or symptoms of COVID-19 prior to stoke. *Young and middle-aged people,*

*barely sick with covid-19, are dying of strokes,* The Washington Post, (April 25, 2020), https://www.washingtonpost.com/health/2020/04/24/strokes-coronavirus-young-patients/.

The United States Attorney General has issued a directive to consider early release for detainees who do not pose a public safety risk, as minimizing crowded populations is the only known way to mitigate spread of this pandemic. *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Atty Gen. (Mar. 26, 2020); Executive Order, No. 2020-29 (COVID-19) (Mar.26, 2020).

CONCLUSION

Defendant Thompson's current living conditions are putting his health at risk, and home confinement is a safer setting for him in light of the current COVID-19 pandemic. Mr. Thompson is unable to attend substance abuse treatment due to the BOP suspending programs in light of COVID-19, and Mr. Thompson could avail himself of substance abuse services if he were placed on home confinement with a tether. Mr. Thompson has been serving a much harsher sentence as a result of lockdown, lack of visitation, and minimal phone calls in light of COVID-19.

Respectfully submitted,

/s/ Sanford A. Schulman
Sanford Schulman
Attorney for Defendant
        Derek Thompson
500 Griswold Street, Ste 2340
Detroit, MI 48226
saschulman@comcast.net
(313) 963-4740


/s/ Stefanie L. Lambert Junttila
Attorney for Defendant
        Derek Thompson
500 Griswold Street, Ste. 2340
Detroit, MI 48226
attorneystefanielambert@gmail.com

Date: August 31, 2020


<u>Certificate of Service</u>

I, Stefanie Lambert Junttila, attorney at law, certify that on August 31, 2020,

I caused a copy of this pleading to be served upon the Clerk of the Court and

Government via E-file.


/s/ Stefanie Lambert Junttila
Stefanie Lambert Junttila (P71303)